UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE I. VELAZQUEZ,

                              Plaintiff,

                    v.

KATHLEEN G. GERBING, *Superintendent Otisville
Correctional Facility*; ANTHONY ANNUCCI, *Acting
Commissioner, New York State Department of
Corrections & Community Supervision*; TINA M.
STANFORD, *Chairwoman, New York State Board of
Parole*; STEVEN BANKS, *Commissioner, New York
City Department of Homeless Services*; BARBARA
LAO, *ORC, Guidance Unit, Otisville Correctional
Facility*; PAROLE OFFICER LINDSY OSOUNA,
*Queens II Parole Office*, SPO CLARENCE NEELY,
*Queens II Parole Office*,

                              Defendants.

No. 18-CV-8800 (KMK)

OPINION & ORDER

---

Appearances:

Jose I. Velazquez
Otisville, NY
*Pro Se Plaintiff*

Jonathan James Wilson, Esq.
Maria Barous Hartofilis, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants Kathleen G. Gerbing, Anthony Annucci, Tina M. Stanford, Barbara Lao,
Lindsy Osouna, and Clarence Neely*

KENNETH M. KARAS, United States District Judge:

        Jose I. Velazquez ("Plaintiff"), proceeding pro se, brings this Complaint, pursuant to 42

U.S.C. § 1983, against Kathleen G. Gerbing ("Gerbing"), Anthony Annucci ("Annucci"), Tina

M. Stanford ("Stanford"), Steven Banks ("Banks"), Barbara Lao ("Lao"), Parole Officer Lindsey

Osouna ("Osouna"), and SPO Clarence Neely ("Neely") (collectively, "Defendants"), alleging

that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments

by failing to properly assist him in finding housing compliant with the Sexual Assault Reform

Act ("SARA"), by holding him past his open parole date, and by seeking to impose certain

parole conditions. (*See* Compl. (Dkt. No. 2); Proposed Addendum (Dkt. No. 22-1).) Before the

Court is Defendants' Motion to Dismiss the Complaint (the "Motion"), filed pursuant to Federal

Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 46).) For the following reasons,

the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and the exhibits attached

therein and are taken as true for the purpose of resolving the instant Motion.[1]

Plaintiff, at all relevant times, has been imprisoned at Otisville Correctional Facility

("Otisville"). (Compl. 1.)[2] Gerbing is the Superintendent of Otisville. (*Id.*) Annucci is the

Acting Commissioner of the New York State Department of Corrections & Community

Supervision ("DOCCS"). (*Id.*) Stanford is the Chairperson of the New York State Board of

Parole (the "Parole Board"). (*Id.*) Banks is the Commissioner of the New York City Department

---

[1] *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (deeming a complaint to include "any written instrument attached to it as an exhibit" (citations omitted)).

[2] Due to duplicative paragraph numbers, the Court cites to the stamped ECF page numbers appearing at the upper right-hand corner of Plaintiff's Complaint. The Court also uses ECF page numbers for all exhibits submitted by Plaintiff.

of Homeless Services/Social Services.  (*Id.*)[3]  Osouna and Neely are parole officers for DOCCS.

(*Id.*)  Lao is an "Offender Rehabilitation Coordinator" ("ORC") for DOCCS, allegedly working

at Otisville.  (*Id.* at 2.)

  Plaintiff alleges that, following a trial, on June 5, 2000, he was convicted of sodomy,

attempted rape, sexual abuse, and unlawful imprisonment in New York State court.  (*Id.* at 6.)

He was sentenced to serving a term of imprisonment of up to 30 years.  (*Id.*)  After he served 18

years in prison, a state court granted Plaintiff a "de novo hearing," which resulted in Plaintiff

being granted "parole release with an open date of April 11, 2018."  (*Id.* at 7.)

  To be released on parole, Plaintiff had to come before a New York State court for a risk

assessment level hearing, pursuant to the Sexual Offender Registration Act ("SORA").  (*Id.*)

Plaintiff claims that, following that hearing, he was deemed a "Level II" sex offender, i.e., given

a classification of "moderate risk to re-offend."  (*Id.*)  According to Plaintiff, while he was

waiting to appear at his SORA hearing, he was informed by Lao that his proposed residence to

the Parole Board—Faith Mission Crisis Center ("Faith Mission")—had been denied by Osouna

and Neely.  (*Id.*)  Plaintiff had allegedly been proposing Faith Mission as his future residence to

the Parole Board since 2014.  (*Id.*)

  Following this denial, Plaintiff asked Lao to contact certain resources, such as "Palladia"

and "Borden Avenue Veterans Residence," which Lao attempted to do, but "to no avail because

she could not get anyone on the phone line."  (*Id.*)  Lao then informed Plaintiff that he should try

to obtain "[l]etters of [r]easonable [a]ssurance" from other "programs for acceptance by parole."

(*Id.*)  Plaintiff allegedly wrote six letters and mailed them to various programs.  (*Id.*)

---

[3] Banks does not appear to be represented by counsel at this time or a part of the instant Motion.  (*See* Dkt.; Not. of Mot. 1.)  Nevertheless, as none of Plaintiff's claims survives this Motion, the Court considers this resolution dispositive as to Banks as well.

On May 6, 2018, Plaintiff wrote to Lao, asking why Osouna and Neely had denied his proposed residence of Faith Mission. (*Id*.) Plaintiff also wrote to Stanford, requesting her assistance in finding housing that would be compliant with SARA. (*Id*.)[4] Plaintiff received a response from Ana Enright ("Enright"), Deputy Commissioner, an employee in Annucci's office. (*Id*.; *see also* Compl. Ex. C(b) ("June 2018 Enright Ltr.") (Dkt. No. 2).) The letter stated that although Plaintiff had suggested a proposed residence program at Faith Mission, the facility "has a maximum stay of 30 days; therefore, it was not explored as a viable residence." (*Id*.) The letter also mentioned that, later, on April 6, 2018, during a "facility interview," Plaintiff offered "no viable [proposed] address," and, subsequently, on May 8, 2018, Plaintiff "advised of [his] attempts to secure housing with the New York City Department of Homeless Services." (*Id*.)

After receiving the letter from Enright, Plaintiff complained to Lao, telling her that he was disappointed that Faith Mission had never been explored as a "viable residence." (Compl. 8.) In the meantime, Plaintiff had been having ongoing conversations with a "friend, Elder Anthony Robinson" ("Robinson"), who had allegedly been attempting to advocate for Plaintiff's residence at Faith Mission. (*Id*.) Plaintiff attaches a letter from Robinson, dated July 9, 2018, in which Robinson wrote to Plaintiff, explaining that "as long as [Plaintiff has] a substance abuse history," Faith Mission could "work with [him]." (*Id*. Ex. D(d)(a) ("July 2018 Robinson Ltr.") 36 (Dkt. No. 2).) Robinson also indicated that after Robinson explained Plaintiff's "current status and . . . history" to Faith Mission, "they further stated that they could be of assistance to

---

[4] Because Plaintiff is incarcerated as a Level II sex offender, his residence must be investigated and approved by the Parole Board as compliant with SARA. *See* N.Y. Exec. Law § 259-c(14); *see also* DOCCS Directive No. 8305 (noting that it is DOCCS policy to "identify persons being released on parole . . . for imposition of a mandatory condition of supervision pursuant to Executive Law § 259-c(14) and to impose the condition . . . at the time of release or other point of eligibility determination").

[Plaintiff] and [his] parole mandates." (*Id*.) Plaintiff also attaches a letter of reasonable

assurance, dated March 14, 2016, written by an intake coordinator at Faith Mission, Myra

Sanabria ("Sanabria"), who wrote, "Clients usually remain in this facility from 7 to 14 days

before being discharged to a supportive rehabilitation setting. You may stay longer if needed; no

client is ever abandoned or discharged without a plan." (*Id*. Ex. E ("Mar. 2016 Sanabria Ltr.")

41 (Dkt. No. 2).) Plaintiff alleges that the "road-blocks" he has encountered while attempting to

propose his post-release residence to the Parole Board have made him feel "discourage[d]" and

"frustrat[ed]" because, according to him, Faith Mission is "SARA compliant," and Plaintiff

believes Enright's explanation—that Faith Mission was too transient of a residence to be taken

under serious consideration—was pretextual. (*Id*. at 8.)

Plaintiff further alleges that he subsequently went to a meeting with Lao and another

ORC, Andrea Goldsmith ("Goldsmith"), on June 28, 2018, where he was informed that he would

be "going to a program in Queens, . . . but not to make his frustration wors[e], he [would] be put

on a waiting list for housing until approved." (*Id*. at 8–9.) Plaintiff alleges that Defendants

"never investigated any other potential SARA compliant address or program where Plaintiff

[could] go ever since the Faith Mission . . . was denied, in spite of the fact that Plaintiff [had]

submitted other address[es]" for them to research and potentially approve. (*Id*. at 9.)

Plaintiff then filed a grievance with Gerbing, dated July 11, 2018 and stamped as

"received" on July 13, 2018, in which he complained of Osouna and Neely's denial of his

proposed residence of Faith Mission. (*Id*. Ex. G ("July 2018 Grievance") 47 (Dkt. No. 2).) An

inmate grievance supervisor, A. Stevenson ("Stevenson"), subsequently responded to the

grievance on July 17, 2018, indicating that Osouna had determined that Faith Mission was "not

suitable for [Plaintiff]," and attaching letters "stating [the] reason." (*Id*. at 50.) He included a

Parole Board report on Faith Mission, "entered by" Osouna that noted that Faith Mission is a "rehab/crisi[s] center" that accepts sex offenders "for treatment services," but they have a "maximum [stay] of 28 days." (*Id*. at 51.) The report concluded that the "address is not suitable for [Plaintiff]." (*Id*.) According to the attached exhibits, Plaintiff appealed the denial of the grievance on July 25, 2018, (*id*. at 52), and subsequently received a response from the Otisville Superintendent's office, which stated, "The facility is not responsible for approvals or denials of parole addresses/residence[s]," and denied the appeal, (*id*. at 53). Plaintiff also notes that he has filed an Article 78 proceeding based on the same circumstances and that it was scheduled to be heard by a New York State court on August 10, 2018. (*See* Compl. 8 n.1, 11.) Plaintiff later submitted documentation from that proceeding, including the state court's Decision & Order, which dismissed Plaintiff's state petition. (*See* Article 78 Documents (Dkt. No. 21).)[5]

Based on the above facts, Plaintiff alleges that Defendant has violated his right to procedural due process under the Fourteenth Amendment, (Compl. 10), and has violated his Eighth Amendment rights by imposing "[e]xtended incarceration," (*id*. at 13–14). Plaintiff's Proposed Addendum also includes allegations that a condition of his parole—specifically, one that appears to limit Plaintiff's access to cellphones—constitutes a violation of the Due Process

---

[5] The state court ultimately found that it was "rational" for the Parole Board to reject Faith Mission as a suitable residence because it "only offers short term housing." (Article 78 Decision & Order ("Article 78 Order") 4 (Dkt. No. 21 at ECF 87–90).) It noted that it could not "substitute its own discretion for that of the individuals in charge of designing the terms of [Plaintiff's] parole release." (*Id*.) The state court also noted that Plaintiff was able to meet with an ORC and a parole officer regarding SARA-compliant housing and was able to propose other potential residences, which DOCCS investigated for SARA compliance, but which ultimately failed to meet SARA standards because the shelters either did not accept sex offenders or did not accept sex offenders at the category of offense to which Plaintiff belongs. (*Id*. at 3.) The court found that DOCCS's investigation of Plaintiff's proposed residences "fulfilled its duty," and that, ultimately, "it remains [Plaintiff's] obligation to locate suitable housing." (*Id*.)

Clause because it is not "reasonably related" to the goal of rehabilitating Plaintiff. (Proposed Addendum ¶¶ 5–7.)

B.  Procedural History

Plaintiff filed his Complaint on September 25, 2018, (*see* Compl.), and Plaintiff's request to proceed in forma pauperis ("IFP") was granted on October 23, 2018, (*see* Dkt. No. 5). On February 11, 2019, Plaintiff submitted a letter attaching documents from the Article 78 proceeding Plaintiff had filed with a New York State court. (*See* Article 78 Documents.) On March 12, 2019, Plaintiff filed a "Proposed Addendum," with exhibits that appear to be notices from the Parole Board regarding Plaintiff's parole conditions. (*See* Proposed Addendum.)

Defendants filed a Motion To Dismiss the Complaint (the "First Motion") on May 8, 2019. (*See* Not. of First Mot. (Dkt. No. 30).) Following that, on May 23, 2019, Plaintiff filed a "Proposed Amended Complaint," which contains allegations of DOCCS personnel "leaving [Plaintiff's] bed in disarray" and engaging "in a type of psychological warfare intimidating-tactics," allegedly in retaliation for filing this lawsuit. (Proposed Am. Compl. 2 (Dkt. No. 33).) Plaintiff claims non-party correction officers Huertero, Suchy, and Howland were involved in these allegations. (*See id*. at 2–3.)

On July 31, 2019, Defendants wrote a letter to the Court asking leave to withdraw and refile their Motion To Dismiss the Complaint, explaining that they had "bec[o]me aware of an inaccuracy on a point of law" in the moving papers accompanying the First Motion. (Dkt. No. 44 at 1.) The Court permitted them to refile. (*See* Dkt. No. 45.)

Defendants filed the instant Motion and the accompanying papers on August 5, 2019. (*See* Not. of Mot.; Defs.' Mem. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 47).) On September 20, 2019, Plaintiff wrote a letter to the Court indicating that he had received "new significant

information pertaining to his proposed address as specified in [the Complaint]" and wished to "append another defendant" to the Action. (Dkt. No. 55.) The Court denied the request without prejudice, indicating that it would first resolve the pending Motion. (Dkt. No. 57.) Plaintiff filed his opposition papers on October 15, 2019. (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 58).) Defendants filed their Reply on October 29, 2019. (Defs.' Reply Mem. in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 59).) Plaintiff filed a Sur-Reply on December 17, 2019. (Pl.'s Reply Mem. in Opp'n to Mot. ("Pl.'s Reply Mem.") (Dkt. No. 63).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559

(S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

### B. Analysis

Defendants argue that Plaintiff's claims should be dismissed against multiple Defendants for failure to plausibly allege their personal involvement, (Defs.' Mem. 5); that Plaintiff's claims regarding his SARA-compliant housing claims should be dismissed because they are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), (*id*. at 9); that Plaintiff fails to state a Fourteenth Amendment procedural due process claim, (*id*. at 10); that Plaintiff's claims are barred by collateral estoppel due to the Article 78 determination issued by the state court, (*id*. at 12); that Plaintiff fails to state an Eighth Amendment claim because he has not been held past his maximum prison sentence, (*id*. at 13); that Plaintiff's claims regarding his parole conditions should be dismissed both due to lack of ripeness, (*id*. at 14), and on the grounds that he fails to plausibly allege that the conditions are not narrowly tailored to the conduct for which he was convicted, (*id*. at 16); and that Defendants are entitled to qualified immunity, (*id*. at 17). The Court will address the arguments as needed.

### 1. Plaintiff's Additional Submissions

At the outset, the Court will address the impact—if any—of Plaintiff's numerous submissions in this Action. When adjudicating a motion to dismiss, the Court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000). Courts also frequently "consider materials outside the complaint to the extent they are consistent with the allegations in the complaint," although this typically refers to "documents that a pro se litigant

attaches to his opposition papers." *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015)

(citations and quotation marks omitted). Additionally, because "[i]t is well established that a

district court may rely on matters of public record in deciding a motion to dismiss," "[t]he Court

may also take judicial notice of all documents in the public record, including . . . the decisions of

the [state court] in the Article 78 proceedings." *Missere v. Gross*, 826 F. Supp. 2d 542, 553

(S.D.N.Y. 2011) (citation and quotation marks omitted).

Here, Plaintiff has made three additional submissions, including the Article 78

Documents, the Proposed Addendum, and the Proposed Amended Complaint. Although none of

these submissions was formally attached to Plaintiff's Memorandum in Opposition to the

Motion, the Court has the discretion to consider the documents as part of its duty to "liberally

construe pleadings and briefs submitted by pro se litigants." *Johnson v. Schriro*, No. 12-CV-

7239, 2013 WL 5718474, at *2 (S.D.N.Y. Oct. 15, 2013) (citations and quotation marks

omitted). The Court interprets the submission of the Article 78 Documents and the Proposed

Addendum as additional materials that Plaintiff intended to attach to his Complaint, and

concludes that they may be considered for purposes of deciding the Motion. As the Article 78

Documents contain submissions that the Court may take judicial notice of anyway, *see Missere*,

826 F. Supp. 2d at 553, this does not materially change the universe of information that the Court

could have considered in deciding the Motion. On the other hand, the Proposed Addendum and

the exhibits attached to it appear to raise new allegations regarding the purportedly unreasonable

conditions of Plaintiff's parole. (*See* Proposed Addendum; *see also id.* Ex. A ("Mar. 5, 2018

Parole Board Notice"), Ex. B ("Aug. 31, 2018 Parole Board Notice") (Dkt. No. 22-1).)

However, these allegations are not necessarily inconsistent with the issues Plaintiff raised in his

Complaint, i.e., that the "special conditions" imposed on his parole will allegedly "frustrate[]"

his ability to "enroll in rehabilitative programs and further [his] adult education." (Compl. 10.)

Accordingly, given the latitude this Court generally provides to pro se litigants and given that

Defendants have responded to these allegations, the Court will consider the allegations raised in

the Proposed Addendum and the exhibits attached therein when deciding this Motion.[6]

In contrast, in his "Proposed Amended Complaint," Plaintiff purports to add allegations

of unconstitutional retaliation against non-parties who have not been served in this Action,

namely correction officers Huertero, Suchy, and Howland. (*See* Proposed Am. Compl. 3.)

These new developments are not "consistent with the allegations in the [operative] [C]omplaint,"

*Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. 2013), nor have

the corrections officers named in that document been served in this Action or given a fair

opportunity to respond. Accordingly, at this time, the Court will not consider Plaintiff's

additional allegations as part of this Action. Following this Opinion & Order, Plaintiff may add

them in as new parties to an amended pleading including these new allegations of retaliation.

This would allow the Court to create a new order of service as to those defendants and formally

bring them into this Action. Alternatively, Plaintiff may bring a separate lawsuit as to the

allegations raised in the Proposed Amended Complaint, although Plaintiff is reminded that, for

each and every claim, he is generally bound to exhaust his administrative remedies before suing

in federal court. *See Clarke v. Thornton*, 515 F. Supp. 2d 435, 439 (S.D.N.Y. 2007) ("Th[e]

administrative exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." (citation, alteration, and quotation marks omitted)).

---

[6] Nevertheless, as discussed below, the claims related to Plaintiff's parole conditions fail because they are unripe.

2. Personal Involvement of Annucci, Stanford, Gerbing, and Lao

Defendants argue that Plaintiff's allegations do not sufficiently establish the personal

involvement of Defendants Annucci, Stanford, Gerbing, and Lao as to any purported

constitutional violation. (Defs.' Mem. 5.)

"It is well settled that, in order to establish a defendant's individual liability in a suit

brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*,

556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one

of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL

365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with

respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Defendants Annucci and Stanford are not alleged to have responded to Plaintiff's

grievances at all. With regard to Stanford, Plaintiff alleges that he wrote a letter to her

explaining "his predicament finding SARA compliant housing" and subsequently received a

response from Enright, Deputy Commissioner in Annucci's office. (Compl. 7.) No other

allegations as to Stanford exist. (*See generally id.*) Enright's response, telling Plaintiff why

Faith Mission was rejected as a potential future residence for him, is also the only connection to

Defendant Annucci. (*Id*. at 7–8.) Even assuming arguendo that Plaintiff's grievances were

within Stanford or Annucci's purview, "it is well-established that an allegation that an official

ignored a prisoner's letter of protest and request for an investigation of allegations made therein

is insufficient to hold that official liable for the alleged violations." *Allah v. Annucci*, No. 16-

CV-1841, 2018 WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018) (citation and quotation marks

omitted) (collecting cases); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000)

(finding allegations that an inmate wrote to prison officials and was ignored insufficient to hold

those officials liable under § 1983). Additionally, "[t]he fact that a supervisory official ignored a

prisoner's letter of protest or referred the letter to other officials for response does not establish

the requisite personal involvement of the supervisory official." *Dean v. Lantz*, No. 08-CV-749,

2009 WL 2151173, at *6 (D. Conn. July 17, 2009) (citation omitted); *see also Allah*, 2018 WL

4571679, at *6 (same). Stanford and Annucci are alleged only to have ignored Plaintiff's letter

of protest; at most, it is possible that either Stanford or Annucci or both referred the matter to

Enright to resolve, but even that would not be sufficient to state personal involvement under

§ 1983. (*See* Compl. 7–8.) Accordingly, Plaintiff's claims against Stanford and Annucci are

dismissed for lack of personal involvement.

  As to Gerbing, Plaintiff alleges that she denied a grievance he submitted regarding the

denial of his proposed parole residence. (*Id.* at 9.) Gerbing wrote in that grievance that Otisville

is "not responsible for approvals or denials of parole addresses/residence." (*Id*.) Indeed,

attached to Plaintiff's Complaint itself is a notice from the Parole Board indicating that parole

officers Neely and Osouna were the individuals who denied Plaintiff's request to use Faith Mission as his parole residence. (July 2018 Grievance 51.) Gerbing cannot be held personally liable for any purported constitutional violation "simply because[, as Superintendent,] [s]he was in a high position of authority at" Otisville. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (explaining that "[a] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [s]he held a high position of authority" (citation and quotation marks omitted)). Nothing in Plaintiff's Complaint or the attached documents allege that Gerbing, the Superintendent of Otisville, would have any role in the approval or denial of Plaintiff's proposed parole residence.

Similarly, as to Lao, Plaintiff alleges only that she informed him of the denial of Faith Mission as an acceptable parole residence and that she served as a liaison between Plaintiff and the Parole Board to help garner more information as to why Faith Mission was denied. (Compl. 7.) Indeed, Plaintiff's Complaint shows that Lao advocated *for* Plaintiff's wish to be housed in Faith Mission, as Plaintiff alleges that Lao attempted to resubmit Plaintiff's application to stay at Faith Mission after it was already denied and that she asked Plaintiff to send her a letter of assurance from Faith Mission should he receive one. (*Id.* at 8.) Plainly, Plaintiff "alleges no *facts* suggesting personal involvement" by either Lao or Gerbing in the actual circumstances leading to Plaintiff's continued detainment at Otisville, i.e., the denial of his proposed parole residence and the lack of movement on his supervised release, so they are also dismissed from this Action. *Terranova v. N.Y. State Dep't of Corrs. & Comm. Supervision*, 268 F. Supp. 3d 453, 457 (W.D.N.Y. 2017) (emphasis in original) (dismissing claim against a superintendent of a prison facility because the plaintiff's allegations were "at best, conclusory and fail[ed] to raise the specter of relief beyond the speculative level"); *see also* N.Y. Comp. Codes R. & Regs. tit. 9,

§ 8006.1 (noting that an appeal from a "final determination" of the Parole Board should be filed with "the New York State Division of Parole" and not listing authorities of individual DOCCS facilities as responsible for parole decisions or their consequences); *Murray v. Breslin*, No. 13-CV-3239, 2015 WL 502225, at *6–7 (E.D.N.Y. Feb. 5, 2015) (dismissing claims against certain defendants for lack of personal involvement because "[a]ctions involving claims for . . . injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action" and because "a plaintiff must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution" (citation, alteration, and quotation marks omitted)).

### 3. Application of *Heck v. Humphrey*

Defendants argue that Plaintiff's claims for denial of SARA approval for his proposed parole residence, whether brought under the Eighth or Fourteenth Amendment, should be dismissed on the grounds that they are barred by *Heck*, 512 U.S. 477. In *Heck*, the Supreme Court held that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck,* 512 U.S. at 487). Moreover, while *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the *conviction*," 512 U.S. at 487 (emphasis added), the Supreme Court has since clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson,* 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred . . . *if* success in that

action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards,* 520 U.S. at 648 (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits). Absent such a showing, a prisoner may only seek relief in the federal courts through a petition for habeas corpus. *See Wilkinson*, 544 U.S. at 81 (holding that habeas corpus is the only remedy available to prisoners seeking to "invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody" (emphasis in original)); *see also Jenkins v. Haubert,* 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed.").

Defendants contend that Plaintiff's Complaint fulfills both conditions of the *Heck* rule. First, Defendants argue, and Plaintiff does not allege otherwise, that Plaintiff's conviction or sentence has not previously been invalidated. Indeed, Plaintiff acknowledges that he was convicted of various sexual crimes and unlawful imprisonment and does not allege that he was wrongly convicted. (*See* Compl. 6.)

Next, Defendants argue that Plaintiff's claims, if true, necessarily imply the invalidity of his sentence. In *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692 (S.D.N.Y. Dec. 19, 2017), this Court agreed with that proposition in very similar factual circumstances. In *D'Angelo*, the plaintiff contended that the defendants were unconstitutionally delaying his conditional release by failing to assist the plaintiff with obtaining SARA-compliant housing, which he alleged was "arbitrary and capricious" behavior. *See id.* at *7. Referring to another

17

district court decision based on similar circumstances, this Court concluded that "[i]f the Court were to find that [the d]efendants should have located SARA compliant housing, and ceased imposing arbitrary and discriminatory burdens on assistance, there would have been no obstacle for [the p]laintiff to immediately obtain conditional release on parole." *Id.* at *7 (citation and quotation marks omitted). Here, unlike the plaintiff in *D'Angelo*, where the plaintiff alleged to be confined past his conditional release date, *see id.*, Plaintiff alleges to be confined past his open parole release date of April 11, 2018, (Compl. 7). However, this distinction does not alter the outcome under *Heck*, as, regardless, "the invalidity of [Plaintiff's] continued confinement beyond the date of his conditional release is necessarily implied by this Action, and it is therefore barred under *Heck* and its progeny." *Id.* at *7 (citation, alteration, and quotation marks omitted); *see also Ahlers v. Boruch*, No. 04-CV-1747, 2007 WL 2042794, at *4 (E.D.N.Y. July 16, 2007) (dismissing the plaintiff's challenge to the imposition of parole residential conditions because, even "if a set of unconstitutional procedures kept [the plaintiff] in prison past [his conditional release] date, a successful attack on that set would mean immediate release for [the plaintiff], because no constitutional obstacle would remain between him and release," requiring barring of the plaintiff's claims under *Heck*). Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process claim is barred by *Heck*. Nevertheless, the Court does not need to rely on this ground alone, as the claim also fails on its merits, as discussed below.

To the extent Plaintiff argues that confinement beyond his conditional release date constitutes cruel and unusual punishment under the Eighth Amendment, that claim is similarly barred by *Heck*. To be sure, not all § 1983 claims based on the Eighth Amendment call into question the validity of a plaintiff's conviction. *See, e.g.*, *Channer v. Mitchell*, 43 F.3d 786, 788 (2d Cir. 1994) (per curiam) (holding that a § 1983 claim "stemming from conditions of

confinement that allegedly violate the Eighth Amendment" are not per se barred by *Heck*)

(collecting cases).  Here, however, the entirety of Plaintiff's Eighth Amendment claim rests on

the very fact of his confinement past his conditional release date.  (Compl. 16 (noting that

Defendants violated the Eighth Amendment by "keep[ing Plaintiff] confined").)  Nowhere in his

Complaint does Plaintiff challenge the *conditions* of his confinement under the Eighth

Amendment.  Thus, any judgment in favor of Plaintiff on his Eighth Amendment claim would

"necessarily imply" the invalidity of confinement which has not yet been invalidated.  *Edwards*,

520 U.S. at 648.[7]  Accordingly, Plaintiff's Eighth Amendment claims are dismissed as barred by

*Heck*.  *See id.*

### 4.  Procedural Due Process Claim

To the extent Plaintiff's procedural due process claim is not barred by *Heck*, it is also

insufficiently pled.

Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . .

deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend.

XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due

---

[7] Moreover, Plaintiff's Eighth Amendment claim would also inevitably fail on its merits since Plaintiff's maximum sentence will not even expire until the year 2030.  (*See* Compl. 6 (noting that Plaintiff was sentenced to up to 30 years on June 5, 2000).)  For extended incarceration to rise to the level of an Eighth Amendment violation, it "must . . . be the product of deliberate indifference."  *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001), *cert. denied*, 535 U.S. 957 (2002); *see also Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (same); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) ("Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest[]; otherwise, such detention can be held to be unconstitutional only if it violates due process." (citations omitted)), *cert. denied*, 478 U.S. 1020 (1986).  "Even if the Court were to find that Plaintiff had met the deliberate indifference requirement [for Eighth Amendment violations], the Complaint would still fail to plausibly state an Eighth Amendment claim given that Plaintiff was not held beyond his *maximum* sentence."  *D'Angelo*, 2017 WL 6514692, at *10 (emphasis in original) (citing *Calhoun*, 999 F.2d at 654) (collecting cases).

process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law). The Due Process Clause protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same). To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998). If a plaintiff establishes such a protected interest, the next question is whether "the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

The Second Circuit has established that a New York parole grantee "has a liberty interest in his open release date of which he may not be deprived without due process." *Victory*, 814 F.3d at 59. However, the liberty interest constitutes only half of the requisite elements to plausibly allege a procedural due process claim.

Where Plaintiff's claim fails is the second half, i.e., that he was deprived of that liberty interest through insufficient due process. "It is undisputed that under New York law the [Parole Board] is entitled to impose conditions on the conditional release of an inmate . . . ." *Doe v. Simon*, 221 F.3d 137, 139 (2d Cir. 2000) (citations omitted). Moreover, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotation marks omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Plaintiff has been given a meaningful opportunity to advocate for his proposed residence and even to appeal its ultimate denial. Plaintiff acknowledges that he is aware that his release is conditioned on the Parole Board's approval of a SARA-compliant residence. (*See* Compl. 7.) He has located and attempted to advocate for his release to Faith Mission, and he has

been "afforded ample opportunities" to argue to the Parole Board why he believes it is an appropriate parole residence. *D'Angelo*, 2017 WL 6514692, at *9 (citation and quotation marks omitted). He was given a reason why Faith Mission was rejected—that the center only permits residents to stay for a maximum of 28 to 30 days, and that an appropriate residence should be able to facilitate a longer stay. (*See* Compl. 8–9.) Plaintiff, through Lao, has attempted to resubmit his application to stay at Faith Mission and has been able to locate and add advocacy from other third parties to support his application, such as Robinson. (*See* July 2018 Robinson Ltr.) Plaintiff even went on to challenge the denial through an Article 78 Petition, which was ultimately heard and dismissed, via a written opinion, by a New York State court. (*See* Article 78 Order; *see also supra* note 5.)

Accordingly, this Court finds that Plaintiff was given constitutionally sufficient procedural due process in proposing a future residence and appealing its denial. *See D'Angelo*, 2017 WL 6514692, at *9 (dismissing procedural due process claim under similar circumstances and noting that, because the plaintiff had meaningful opportunities to propose future residences, his challenge was "to the mere fact of his confinement beyond his conditional release date, and is devoid of any allegations regarding specific deficiencies in the process he was afforded"); *Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *4–5 (S.D.N.Y. Apr. 29, 2016) (dismissing parole grantee's procedural due process claim and noting that the "Second Circuit has held that the availability of an Article 78 proceeding constitutes a meaningful post-deprivation remedy" where the court assumed that the deprivation of a liberty interest had occurred (citation omitted)); *see also Moore v. Newton*, 220 F. Supp. 3d 275, 294–95 (E.D.N.Y. 2016) ("[T]he Second Circuit distinguishes between due process claims based on established state procedures and claims based on random, unauthorized acts by state employees. . . . Where a claim is based

on such random, unauthorized acts, [however,] a prisoner's due process rights are not violated so long as the government provides a meaningful remedy subsequent to deprivation," such as "an Article 78 or habeas proceeding under state law." (citations, alterations, and quotation marks omitted)).

### 5. Claims Related to Conditions of Parole

Constitutional ripeness is concerned with "Article III limitations on judicial power." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (citation and quotation marks omitted). "[Constitutional ripeness] prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003). The inquiry essentially mirrors that governing Article III standing and asks whether the question presents a "genuine 'case or controversy.'" *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997). A genuine case or controversy exists if a plaintiff shows "an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009) (citation omitted). Significantly for these motions, a claim is not ripe under this analysis "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and quotation marks omitted).

Plaintiff's Proposed Addendum attaches Parole Board documents indicating that Plaintiff's supervised release is subject to a number of limitations on his post-release conduct, including limitations on Plaintiff's access to telephones and computers. (*See* Proposed Addendum ¶ 5.) In *United States v. Balon*, 384 F.3d 38 (2d Cir. 2004), the Second Circuit held

that it was unripe for an incarcerated plaintiff to challenge some of the special conditions of his parole, including special conditions pertaining to monitoring of his internet usage. *See id.* at 46–47 (noting that because the plaintiff would not be released under supervised release for some time, "it is impossible to evaluate at this time whether one method or another, or a combination of methods, will occasion a greater deprivation of his liberty than necessary in light of the special needs of his supervised release"). The Second Circuit also noted that there was "no substantial hardship to the parties that would preclude withholding of judicial consideration at this time," since other actions would be available to the plaintiff to challenge the conditions of supervised release at the time that he was actually experiencing them. *Id.* at 46–47.

Similarly here, there are a number of "contingent future events", *Texas*, 523 U.S. at 300 (quotation marks omitted), that prevent the Court from being able to address whether the parole conditions of which Plaintiff complains—if they come to fruition at all—will result in "a greater deprivation of his liberty than necessary," *Balon*, 384 F.3d at 46. In fact, the bulk of Plaintiff's Complaint pertains to his frustration with the uncertainty of his release date and his inability to secure SARA-compliant housing, without which Plaintiff cannot be scheduled for release at all. In the meantime, Plaintiff continues to have regular parole hearings, which provide opportunities to further alter or tailor Plaintiff's parole conditions. (*See* Mar. 5, 2018 Parole Board Notice; Aug. 31, 2018 Parole Board Notice.) Furthermore, the attached exhibits indicate only that Plaintiff's ownership of a "communication device[]" is subject to approval from his parole officer, not that Plaintiff is banned from owning a "communication device[]" entirely, creating

even more uncertainty as to whether Plaintiff's concerns about not being able to possess a cellphone will even come to pass. (Mar. 5, 2018 Parole Board Notice 8.)[8]

Accordingly, the Court dismisses Plaintiff's claims of unreasonable parole conditions in violation of the Due Process Clause as unripe. *See Balon*, 384 F.3d at 46–47; *see also United States v. Randazzo*, 763 F. App'x 140, 141 (Mem) (2d Cir. 2019) (dismissing challenge of technological limitations on supervised release as unripe for a still-incarcerated plaintiff); *cf. Newman v. Annucci*, No. 17-CV-0918, 2019 WL 3050520, at *4–5 (N.D.N.Y. July 12, 2019) (noting that, in a previous dismissal, the court had asked the plaintiff to "establish standing" by indicating the "reasons he believes that the defendants are likely to impose the challenged condition(s) after he is released" and permitting the claim to survive a motion to dismiss because DOCCS had repeatedly imposed the same conditions on the plaintiff in the past).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motion To Dismiss.[9]  Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice.  If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff has requested to add another defendant to this case, (*see* Dkt. No. 55), and Plaintiff may do so in in his amended complaint.  Plaintiff is advised that an amended complaint will *replace* the Complaint and, therefore, must contain *all* of the alleged

---

[8] The Court refers to ECF page numbers when citing to the exhibits attached to the Proposed Addendum.

[9] Because all the claims were dismissed on other grounds, the Court does not address Defendants' arguments regarding qualified immunity, the substantive reasonableness of Plaintiff's parole conditions, or collateral estoppel at this time.

facts on which Plaintiff bases his claims. Plaintiff is also instructed to include *every* count he wishes to litigate and *every* defendant he wishes to include in this Action within one amended complaint. The Court will not search through multiple, disjointed submissions to discern and evaluate Plaintiff's claims in the future.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 30, 46),[10] and to mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

Dated: February 14, 2020
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] As discussed in the Procedural History above, there are two pending Motions on the docket, but the First Motion was withdrawn and replaced by the instant Motion. Nevertheless, both Notices of Motion should be terminated.